IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

UNITED STATES OF AMERICA

v.                                                                            Case No. 4:24cr4

DAVID L. MERRYMAN.

### DEFENDANT DAVID L. MERRYMAN'S BRIEF IN SUPPORT OF MOTION FOR APPROPRIATE RELIEF FOR ALLEGED IMPROPER CONDUCT BY LEAD CASE AGENT IN CONNECTION WITH CERTAIN CONTACTS WITH POTENTIAL DEFENSE WITNESSES

COMES NOW the defendant, David L. Merryman, and as and for his Brief In Support Of Motion For Appropriate Relief For Alleged Improper Conduct By Lead Case Agent In Connection With Certain Contacts With Potential Defense Witnesses, respectfully states the following in support thereof:

### FACTS

The undersigned defense counsel respectfully represents that the following information has been presented to him in connection with the instant Motion:

Ms. Reyna Espinal has been the defendant's girlfriend for some time. The defendant is presently separated from his wife. Reyna has a son named Kevin, who is a young adult. Reyna and Kevin had been working in the defendant's landlord rental business assisting the defendant with managing his properties.

Kevin and Reyna advised that on Thursday, March 7, 2024 (post-Indictment), in the early evening, FBI Special Agent Theodore Roese (hereinafter identified as "the Agent"), known to them also as "FBI Agent Ted" visited Kevin and Reyna as part of the Agent's ongoing investigation.

During the course of the investigative meeting, Kevin and Reyna alleged that the

1

Agent "talked about the case." Kevin and Reyna assert that the Agent:

> ... said even if David takes a plea, he is looking at 10-12 years, and 60 years if he [sic] charged and convicted of everything. Ted said they usually seize property in a case like this, but not in this case because there is an $8 million civil case form [sic] the "general attorney" (Attorney General or "AG") and they will come for everything – property, bank accounts, etc.  He said all of the Judges have something against Dave and he won't get out.
>
> *Ted said that if they keep helping Dave, **they can be charged with conspiracy**.  He basically told them to leave now or risk losing everything (b/c AG will take everything & b/c Dave is not getting out).
>
> Ted told Reyna that in 2022 Dave went to jail for a couple of months, and he was telling his ex-wife* (Ann, LNU) the same bs he is telling Reyna now.  (*Note: Dave and Ann are technically still married but she is not in the picture other than that she picks up her monthly support income).   Ted said they were easy on Dave last time...

Excerpts from Redacted Internal Memorandum prepared by Sacks & Sacks Senior Paralegal Ivana Cobanov reflecting information presented to her by Kevin and Reyna in an office interview with them on Friday, March 8, 2024 at p. 2 thereof.

Kevin further stated during this interview that he "is worried that he and his mom could get charged with something." *Id*. at p. 3.[1]

In addition, a friend of the defendant, one Tyler Kline, has advised that during a post-Indictment interview of him conducted by the Agent, Mr. Kline got the impression that the Agent was in effect telling him that, "If I were you, I would steer clear of the defendant with everything going on."

## ARGUMENT

---

[1] Well prior to the filing of the instant Motion, defense counsel provided a copy of the entire

## History of Supervisory Powers of Federal Courts

In *McNabb v. United States, 318 U.S. 332 (1943)* (Frankfurter, J), the Supreme Court reversed a lower Court judgment affirming convictions of second degree murder, finding that admissions by the defendants that were crucial to the convictions were improperly received into evidence.

In doing so, the Court rested its decision not specifically upon conventional principles of constitutional criminal law and procedure, but, rather, upon the much broader and more general "exercise of its <u>supervisory authority over the administration of criminal justice in the federal courts</u>…" *318 U.S.* at 341 (emphasis added).

The Court found that certain methods utilized by law enforcement officers in that case to extract admissions from the accused defendants were anathema to the ordered and "civilized standards" that must be applied to the administration of criminal justice in the federal courts, and, accordingly, ruled that such statements procured pursuant to such offensive tactics were inadmissible as a matter of supervisory fairness.

In parsing and delineating the nature and scope of the federal courts' inherent supervisory powers to eschew and/or condemn unscrupulous police conduct in matters before those Courts, the Supreme Court noted in *McNabb*, first, as follows:

> <u>Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence</u>. Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as "due process of law" and below which we reach what is really trial by force.

*318 U.S.* at 340 (emphasis added).

---

Redacted Internal Memorandum to Government Counsel for their consideration.

In further explaining the basis for the existence of such supervisory powers, the *McNabb* Court also noted that:

> The principles governing the admissibility of evidence in federal criminal trials have not been restricted, therefore, to those derived solely from the Constitution. <u>In the exercise of its supervisory authority over the administration of criminal justice in the federal courts</u>, see *Nardone v. United States*, <u>308 U. S. 338</u>, <u>308 U. S. 341</u>-342, <u>this Court has, from the very beginning of its history, formulated rules of evidence to be applied in federal criminal prosecutions</u>.

*318 U.S.* at 341 (emphasis added).

Finally, in what can only be described as very powerful and unusually inspiring language, the *McNabb* Court additionally expounded upon the policy underpinnings of the supervisory powers doctrine, as follows:

> <u>A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process</u>. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. <u>Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous, as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary</u>. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication.

*318 U.S.* at 343 (emphasis added).

Although decided many years ago, the defendant respectfully submits that the principles that *McNabb* espoused remain valid and relevant today. If ever there were a situation justifying the application of supervisory powers to enforce the highest standards of criminal justice and individual rights, it would be under circumstances, as here, where, if

accurately represented by the witnesses, the lead case Agent allegedly makes highly biased, negative comments, including very personal ones, about the defendant, and potentially chills the willingness of potential defense witnesses to participate on behalf of the defendant in the development and presentation of the defendant's defense, including testifying.

### The Supervisory Powers Doctrine Today

In *United States v. Terry, 14 F. App.'x 253, 255 (4th Cir. 2001),* the Court said as follows:

> To prevail on a claim of governmental misconduct and obtain the extreme remedy of dismissal of his indictment, a defendant must show: (1) the government's conduct was improper; and (2) the conduct prejudicially affected his substantial rights so as to deprive him of a fair trial.

*Accord United v. Cruz-Polanco, 797 F. App.'x 92, 94 (4th Cir. 2019).*

The defendant recognizes that even where, as here, there is alleged significant police misconduct in the approach to potential defense witnesses, the defendant bears a heavy burden to show prejudice sufficient to justify total dismissal of the indictment. Nevertheless, the defendant respectfully submits that such conduct exists here, but also notes that trial is still months away, the defendant's investigation and trial preparation continues, and additional evidence and information may well be developed that place the challenged conduct in an even more compelling context justifying dismissal.

On the other hand, even if, *arguendo*, the Court finds that the conduct at issue does not rise to the extreme level of dismissal, surely lesser forms of appropriate relief remain available to the Court in the exercise of its supervisory powers. These include, but are not limited to, limitations on the lead Agent's in-Court testimony, leave to permit defense

counsel greater latitude in cross-examination of the Agent with respect to witness credibility matters contained in the statements assigned to him by the potential defense witnesses, and an appropriate jury instruction addressing the particular allegations in this Motion,

## CONCLUSION

The defendant respectfully submits that the challenged comments and statements by the Agent should not have been made. No legitimate investigative or fact-gathering purposes or policies can be served by exposing potential defense witnesses to such commentary. It should not be surprising, therefore, that potential defense witnesses, particularly Kevin and Reyna, would be concerned about having anything to do with the defendant, much less participate in his defense. The prejudice here is real, and the defendant, by counsel, is still assessing its scope and breadth.

For the foregoing reasons, therefore, the defendant respectfully submits that he has demonstrated good cause in the interest of justice for the application of the Court's supervisory powers to this particular situation and for the granting of appropriate relief in response thereto as prayed for in the instant Motion.

                                                DAVID L. MERRYMAN
By: _____/s/_____
                Andrew M. Sacks, Esquire

Andrew M. Sacks, Esquire, VSB#: 20082
Attorney for defendant David L. Merryman
SACKS & SACKS, P.C.
Town Point Center
150 Boush Street, Suite 505
Norfolk, VA 23510
Telephone: (757) 623-2753
Facsimile: (757) 274-0148
E-mail: andrewsacks@lawfirmofsacksandsacks.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 15th day of May, 2024 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

| | | |
|---|---|---|
| Brian James Samuels, Esquire<br>Assistant United States Attorney<br>United States Attorney's Office<br>Fountain Plaza Three<br>721 Lakefront Commons, Suite 300<br>Newport News, Virginia 23606<br>Telephone: 757-591-4032<br>Facsimile: 757-591-0866<br>E-mail: brian.samuels@usdoj.gov | and | David M. Coleman, Esquire<br>Assistant United States Attorney<br>United States Attorney's Office<br>Fountain Plaza Three<br>721 Lakefront Commons, Suite 300<br>Newport News, Virginia 23606<br>Telephone: 757-591-4028<br>Facsimile: 757-591-0866<br>E-mail: mack.coleman@usdoj.gov |

                                                                     /s/<br>
                                                     Andrew M. Sacks, Esquire

Andrew M. Sacks, Esquire, VSB#: 20082<br>
Attorney for defendant David L. Merryman<br>
SACKS & SACKS, P.C.<br>
Town Point Center<br>
150 Boush Street, Suite 505<br>
Norfolk, VA 23510<br>
Telephone: (757) 623-2753<br>
Facsimile: (757) 274-0148<br>
E-mail: andrewsacks@lawfirmofsacksandsacks.com<br>
<sub>F:\IC\MERRYMAN David\Mot5ever5 15 2024.doc</sub>